IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AVALON RESIDENTIAL CARE HOMES, INC., et al., | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:11-CV-1239-D |
| VS. | § § | |
| CITY OF DALLAS, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims under the Fair Housing Act ("FHA"), 42 U.S.C.

§§ 3601-3619, the court must decide whether plaintiffs have standing, whether one plaintiff's

FHA reasonable accommodation is ripe, and whether the plaintiff who has standing has

stated a claim on which relief can be granted.

I

This is a suit by plaintiffs Avalon Residential Care Homes, Inc. ("Avalon"), a non-

profit organization that provides housing and residential services to people with Alzheimer's

disease, and Ruth Anne Seib ("Seib"), owner of multiple homes used by Avalon, against

defendant City of Dallas ("City") alleging violations of the FHA[1] and the ADA. Avalon sued

the City in 1999 alleging violations of the FHA. *See Avalon Residential Care Homes, Inc.*

---

[1]Plaintiffs also alleged claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* As the court explains *infra* at § VIII, plaintiffs move to dismiss their ADA claims, and the court grants their motion.

*v. City of Dallas*, 130 F.Supp.2d 833 (N.D. Tex. 2000) (Solis, J.).  The parties settled the lawsuit in 2001[2].  Following the settlement, Avalon opened within the city of Dallas several more residences for people with Alzheimer's disease.  Avalon contends that these residences have not adversely impacted the communities in which they are located, and that the City has noted their high quality.  Avalon alleges that the City has cracked down on group homes, enforcing a zoning ordinance against Avalon that limits to eight the number of unrelated, disabled people who may live in a single-family group home.  Avalon operates multiple group homes that have more than eight residents.

After the City informed Avalon that it intended to enforce the zoning ordinance, Avalon sent an email to the City requesting a reasonable accommodation.  An Assistant City Attorney wrote a letter to Avalon denying the request.  The letter stated that the ordinance itself is a reasonable accommodation because it allows eight disabled, unrelated people to live together, even though only five unrelated, nondisabled people can live together in a single family residence.  The parties met in an unsuccessful attempt to resolve the dispute. The City then informed Avalon that it intended to seek an injunction preventing Avalon from operating its residences for eight or more people unless Avalon provided the City financial information that would allow it to better assess Avalon's need for a reasonable accommodation.  In response, Avalon and Seib filed this suit against the City.

---

[2]In deciding the City's motion to dismiss under Fed. R. Civ. P. 12(b)(6) motion, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

Avalon alleges that § 51A-4.209(b)(6) of the Dallas Development Code (the "Code")[3]—which limits the number of unrelated, disabled individuals who may live in a single family residence to eight—facially discriminates against people with disabilities, in violation of the FHA and ADA. Avalon also asserts that, because for clinical and economic reasons it needs to operate a group home in which ten or more people reside, the City is obligated under the FHA to provide it with a reasonable accommodation. Finally, Avalon avers that instead of enforcing the ordinance against inferior group homes located in Dallas, the City is enforcing the ordinance against Avalon in retaliation for Avalon's 1999 lawsuit.

The City moves under Fed. R. Civ. P. 12(b)(1) to dismiss plaintiffs' action for lack of standing, and it moves to dismiss their reasonable accommodation claim on the ground that it is not ripe. The City also moves under Rule 12(b)(6) to dismiss all of plaintiffs' claims for failure to state a claim on which relief can be granted.

II

Because standing is a prerequisite to the exercise of subject matter jurisdiction, the court considers this issue first. *See, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007).

---

[3]Plaintiffs cite § 51A-4.209(6) of the Code as the ordinance that limits the number of unrelated, handicapped individuals who may reside in a single-family zoning district. Although § 51A-4.209(6) defines a single-family zoning district, it is § 51A-4.209(b)(3.1)(A) that defines a "Handicapped group dwelling unit" and limits the number of unrelated, handicapped individuals who may reside in a single dwelling unit to eight. The court will assume that, as the City appears to recognize, that plaintiffs are challenging the definition in § 51A-4.209(b)(3.1)(A).

A

The doctrine of standing addresses the question of who may properly bring suit in federal court. It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy the case-or-controversy requirement of Article III of the Constitution, the plaintiff must show that it has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact must be "concrete and . . . actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).[4] Moreover, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

In its prudential dimension, standing encompasses "several judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984). These include:

> whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third

---

[4]This tripartite test applies to all plaintiffs in federal court, whether individual or organizational. *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999).

parties.

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999). Congress

may, however, "by legislation, expand standing to the full extent permitted by Art. III," thus

proscribing the judicial cognizance of prudential standing considerations. *Gladstone,*

*Realtors v. Vill. of Bellwood,* 441 U.S. 91, 100 (1979); *accord Bennett*, 520 U.S. at 162.

Congress has abrogated prudential standing under the FHA,[5] thus extending standing to the

limits of Article III. *See Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) ("The Supreme

Court has held that the sole requirement for standing under the FHA is the Article III

minima.") (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)). Therefore,

standing under the FHA depends only on the constitutional elements of injury in fact,

causation, and redressability.

As the parties seeking to invoke federal jurisdiction, plaintiffs bear the burden of

proving their standing. *Lujan*, 504 U.S. at 561. Because the City filed its motion to dismiss

without supporting evidence, its attack on the court's jurisdiction is considered facial rather

than factual, and the court must presume that the allegations of Avalon's complaint are true.

*See, e.g., Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *2 (N.D. Tex. Aug. 28,

2007) (Fitzwater, J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May

---

[5]Because plaintiffs no longer wish to pursue their ADA claims, *see infra* § VIII, the
court only addresses standing under the FHA.

1981)).[6]  Further, "[t]he court must deny the motion if the allegations are sufficient to allege jurisdiction."  *Id.*  On a motion to dismiss for lack of standing, "general factual allegations of injury resulting from the defendant's conduct may suffice" because the court "presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

                                            B

          Because Congress has abrogated prudential standing under the FHA, Avalon can establish standing based on the rights of its residents to be free from unlawful discrimination. *See AHF Cmty. Dev., LLC v. City of Dallas*, 633 F.Supp.2d 287, 293 (N.D. Tex. 2000) (Fitzwater, C.J.).  "[A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed."  *Gladstone, Realtors*, 441 U.S. at 103 n.9 (interpreting FHA); *see Warth*, 422 U.S. at 501 ("[P]ersons to whom Congress has granted a right of action . . . may have standing to seek relief on the basis of the legal rights and interests of others[.]").[7]  The City does not dispute this proposition.  Instead, the City contends that the plaintiffs have not alleged an injury.

          The City argues, first, that Avalon has not suffered actual injury as a result of the

          _____

          [6]The court discusses the basis for treating the City's challenge as facial in greater detail *infra* at § III.

          [7]Avalon asserts standing only on the basis of its own alleged injury.  It does not allege that it has associational standing to sue on behalf of its clients in the absence of injury to itself.  Therefore, the court does not consider this question.  *See, e.g., Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587-88 (5th Cir. 2006) (discussing requirements for associational standing).

                                          - 6 -

City's conduct.  Avalon and the City dispute the appropriate standard for analyzing whether Avalon has sufficiently alleged injury in fact.  The City maintains[8] that Avalon is an advocacy group, and it must therefore show that the City's actions frustrated its mission and required it to divert its resources.  *See Ass'n of Cmty. Org. for Reform Now*, 178 F.3d at 360. Avalon contends that because it is a housing provider, under *El Sereno, LLC v. City of Garland*, 2010 WL 1741334, at *2 (N.D. Tex. Apr. 29, 2010) (Fitzwater, C.J.), it is not required to make such showings, and instead must only allege "economic loss."  Regardless whether Avalon is defined as an advocacy group or as a housing provider, alleging an economic loss is sufficient injury to convey standing in response to a facial challenge.  *See AHF Cmty. Dev.*, 633 F.Supp.2d at 295 ("It is well settled that economic loss represents injury in fact." (citing *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 302 (5th Cir. 2005))).

Avalon maintains that, for clinical and economic reasons, it needs to operate group homes in which ten or more people reside.  Because a court presumes on a motion to dismiss that "'general allegations embrace those specific facts that are necessary to support the claim,'" *Bennett*, 520 U.S. at 168 (quoting *Lujan*, 504 U.S. at 561), specific allegations of how the City's law causes Avalon to suffer economic loss can be presumed from Avalon's general allegation.  For example, Avalon might not be able to operate some of its residences if only eight residents, rather than ten or more, are paying for Avalon's services.  Therefore,

---

[8]The City cites *Inclusive Communities Project, Inc. v. Texas Department of Housing & Community Affairs*, 2008 WL 5191935, at *4 (N.D. Tex. Dec. 11, 2008) (Fitzwater, C.J.).

the court holds that Avalon has adequately alleged injury in fact.

The court considers second whether Avalon has adequately alleged causation. To satisfy this element of standing, Avalon must plead that its putative injury is fairly traceable to the challenged City ordinance. "[A]lthough the causal connection 'cannot be too speculative, or rely on conjecture about the behavior of other parties, [it] need not be so airtight . . . as to demonstrate that [Avalon] would succeed on the merits.'" *AHF Cmty. Dev.*, 633 F.Supp.2d at 295 (some brackets and ellipsis in original) (quoting *Coal. for a Sustainable Delta v. Carlson*, 2008 WL 2899725, at *5 (E.D. Cal. July 24, 2008)). Neither side discusses causation in detail in the briefing. But Avalon clearly alleges that its injury is directly caused by the City's ordinance that limits to eight the number of unrelated, disabled individuals who may live together in a single-family home, because Avalon asserts that, for clinical and economic reasons, it needs to operate residences for ten or more people. Therefore, the court holds that Avalon has adequately alleged causation.

Third, Avalon must adequately plead that it is likely, as opposed to merely speculative, that its injury will be redressed by a favorable decision. *See AHF Cmty. Dev.*, 633 F.Supp.2d at 295 (citing *Lujan*, 504 U.S. at 561). Avalon seeks an injunction to prevent the City from enforcing the ordinance, and it requests awards of compensatory and punitive damages. If granted, such an injunction would enable Avalon to operate residences for ten or more people, thereby addressing its claimed injury. The court therefore concludes that Avalon has satisfied the third and final requirement of standing.

C

The court now considers whether Seib has adequately pleaded standing. Because Seib and Avalon assert identical FHA claims, the question whether Seib has standing also depends only on the constitutional elements of injury in fact, causation, and redressability. The only alleged injury that potentially relates to Seib is the assertion in the complaint that the ordinance prevents Avalon from operating residences for ten or more people. The complaint does not specifically allege how the ordinance causes injury to Seib.[9] Accordingly, the court holds that Seib lacks standing to bring an FHA claim against the City.

Although the court grants the City's motion to dismiss in this respect, it will permit Seib to replead. *See*, *e.g.*, *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). Plaintiffs must file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

---

[9]In their response to the City's motion to dismiss, plaintiffs only allege that Avalon suffered injury.

III

The court now considers the City's Rule 12(b)(1) motion to dismiss Avalon's reasonable accommodation claim on the ground that it is not yet ripe.[10] This is a facial attack because, although the City relies in part on affidavits and other evidentiary materials to attack Avalon's allegations, it did not explicitly claim or otherwise imply that it intended to make a factual attack upon the complaint.[11]

A

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588-89 (1972)). Because ripeness is a component of subject matter jurisdiction, a court does not have the power to decide claims that are not yet ripe. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). The two primary considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *modified on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

---

[10]In the balance of this memorandum opinion and order, the court only addresses the claims of Avalon because Seib lacks standing under the FHA and plaintiffs move to voluntarily dismiss their ADA claim.

[11]If the City intended to make a factual attack, it was obligated to provide Avalon sufficient notice that it was doing so.

- 10 -

B

The court examines first the fitness of the issues for judicial decision. A reasonable accommodation claim under the FHA is fit for judicial decision "'when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings.'" *Groome Res. Ltd., LLC v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (quoting *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 602 (4th Cir. 1997)).[12] Avalon alleges that its request for a reasonable accommodation from the City was denied. Because the allegations of Avalon's complaint are presumed to be true in the context of this motion, the court holds that Avalon's reasonable accommodation claim is fit for judicial decision.[13]

The court considers, second, the hardship to the parties that would result if the court withholds further consideration of the issues. It is well recognized that "'housing discrimination causes a uniquely immediate injury. Such discrimination, which under the FHA includes a refusal to make reasonable accommodations, makes these controversies

---

[12]Ripeness for the purposes of the FHA "must be distinguished from ripeness cases involving unconstitutional takings or other zoning issues." *Groome Res.*, 234 F.3d at 199 n.6; *see Bryant Wood Inn*, 124 F.3d at 602 ("Fair Housing Act claims are thus unlike takings claims, which do not ripen until post-decisional procedures are invoked without achieving a just compensation.").

[13]Ripeness, like the elements of standing, is "an indispensable part of the plaintiff's case, [requiring] each element [to] be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (addressing standing). Therefore, at a later stage of this litigation, Avalon will remain obligated to adduce evidence that the City denied Avalon's request for a reasonable accommodation.

ripe.'" *Groome Res.*, 234 F.3d at 200 (quoting *Assisted Living Assocs. v. Moorestown Twp.*, 996 F. Supp. 409, 427 (D.N.J. 1998) (listing cases)). Because Avalon alleges that the City denied its request for a reasonable accommodation, the claim is ripe.[14]

IV

Finally, the court turns to the City's Rule 12(b)(6) motion to dismiss.

In deciding this motion, the court evaluates the sufficiency of Avalon's complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive the City's motion to dismiss, Avalon must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise the right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[14]Because the court otherwise determines that Avalon has standing and that its reasonable accommodation claim is ripe, and that Seib lacks standing, the court need not reach the argument that the threat of civil action under *KVUE, Inc. v. Moore*, 709 F.2d 922 (5th Cir. 1983), grants Avalon and Seib standing and makes their reasonable accommodation claim ripe.

possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

V

The City moves to dismiss Avalon's FHA-based claim that § 51A-4.209(b)(3.1)(A) of the Code is facially discriminatory.  In response, Avalon concedes that the ordinance is facially neutral, and it requests leave to amend to allege that the ordinance has a disparate impact on the disabled.  The court grants the motion.  *See Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d at 567-68.  Accordingly, the court need not address the City's contention that Avalon has failed to state a claim that the ordinance is facially discriminatory.

VI

The City moves to dismiss Avalon's FHA-based reasonable accommodation claim.

A

The City denied Avalon's request that Avalon be allowed to operate residences with more than eight people.  Under the FHA, an accommodation is required if it is "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods Inn*, 124 F.3d at 603; *see* 42 U.S.C. § 3604(f)(3).

In assessing whether an accommodation is reasonable, "a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped." *Bryant Woods Inn*, 124 F.3d at 604; *see also Elderhaven, Inc. v. City*

*of Lubbock*, 98 F.3d 175, 178 (5th Cir. 1996) ("We assume that the plaintiff is correct that a reasonable accommodation is one that does not place an undue burden upon the targeted government entity[.]").

Avalon maintains that its group homes that currently operate with more than eight residents have had no adverse impact on their communities and that the City has had no reason to complain about their operation. According to Avalon, these group homes significantly benefit the disabled. As Judge Solis recognized in Avalon's prior lawsuit against the City, "commercial group homes may be the only way for disabled individuals to live in a residential community." *Avalon Residential Care Homes*, 130 F.Supp.2d at 841 n.11.

If, as Avalon alleges, its group homes do not negatively impact their communities and Avalon needs to operate them for ten or more people, its requested accommodation would neither undermine existing zoning regulations nor place an undue burden on the City. Therefore, Avalon has plausibly pleaded that it requested a reasonable accommodation.

B

The court next examines whether Avalon has sufficiently pleaded that its requested accommodation is necessary. For an accommodation to be necessary, the plaintiff must demonstrate "a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided to the handicapped person." *Bryant Woods Inn*, 124 F.3d at 604. A proposed accommodation is not necessary if it "provides no direct amelioration of a disability's effect." *Id.*

Often, the disabled are "not able to live safely or independently without . . . group homes," and "[t]he availability of such a home in communities is an essential ingredient of normal living patterns." *Groome Res.*, 234 F.3d at 202 & 202 n.14.  Avalon alleges that, for clinical and economic reasons, it needs to operate group homes of ten or more people. Assuming, as the court must, that this allegation is true, the ordinance may prevent Avalon from operating group homes in certain communities, thereby decreasing the opportunities for disabled individuals to reside in those communities.  Therefore, Avalon has plausibly pleaded that its proposed accommodation is necessary for the disabled to have equal opportunity to use and enjoy housing.

C

Finally, the court examines whether Avalon has plausibly pleaded that the proposed accommodation affords handicapped persons equal opportunity.

The equal opportunity requirement "mandates not only the level of benefit that must be sought by a reasonable accommodation but also provides a limitation on what is required." *Bryant Woods Inn*, 124 F.3d at 604.  The FHA only requires the equal treatment of the handicapped, which "does not include affirmative action by which handicapped persons would have a greater opportunity than nonhandicapped persons." *Id.* (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410-11 (1997)).  The City contends that the ordinance is a reasonable accommodation and already provides greater opportunity for the handicapped because it permits up to eight disabled, unrelated people to live together, while only five nondisabled, unrelated individuals may live together in a single family residence.

The court holds that Avalon has plausibly pleaded the third element.  Even if the court assumes that the City attempted to reasonably accommodate the disabled through the ordinance, this does not preclude Avalon from establishing that the ordinance is insufficient of itself to provide the disabled an equal opportunity to use and enjoy single-family housing. Assuming the truth of Avalon's allegation that clinical and economic reasons require it to operate group homes for ten or more people, Avalon has plausibly pleaded that the ordinance itself does not qualify as a reasonable accommodation under the FHA.  Avalon has therefore pleaded a plausible FHA claim against the City for denying it a reasonable accommodation. The City's motion to dismiss is denied in this respect.

VII

The court turns next to the City's motion to dismiss Avalon's FHA-based retaliation claim.

A

Retaliation claims brought under federal law are often subject to the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002) ("We apply the *McDonnell Douglas* burden-shifting rules to claims of retaliation pursuant to [the FHA, ADA, and Rehabilitation Act].").  The framework is a three-stage evidentiary method that enables a plaintiff to rely on indirect evidence alone to prove unlawful retaliation.  If a plaintiff makes a prima facie showing of retaliation, "the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the

. . . action." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (citations omitted). "If the defendant introduces evidence which, if true, would permit the conclusion that the . . . action was [not retaliatory], the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff." *Id.*

Although the Fifth Circuit has yet to apply the *McDonnell Douglas* burden-shifting framework to FHA retaliation claims, the court will do so here. First, the Fifth Circuit already applies the framework to FHA-based discrimination claims. *See Scruggs v. Marshall Hous. Auth.*, 232 F.3d 210, 2000 WL 1273473, at *1 (5th Cir. Aug. 23, 2000) (per curiam) (unpublished table decision). Second, the Fifth Circuit extended the framework to retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq. See, e.g.*, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (applying *McDonnell Douglas* to ADEA claim); *Long*, 88 F.3d at 304 (applying *McDonnell Douglas* to Title VII claim). Third, other circuits have extended the *McDonnell Douglas* framework to FHA retaliation claims. *See Reg'l Econ. Cmty. Action Program*, 294 F.3d at 54 (applying *McDonnell Douglas* burden-shifting framework to FHA retaliation claim); *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) ("As with any retaliation claim, we apply the familiar [*McDonnell Douglas*] burden-shifting analysis established by the Supreme Court[.]"). Fourth, neither party offers the court a

reason why the burden-shifting framework should not apply.[15]

B

The FHA makes it unlawful

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [*inter alia*, section 3604] of this title.

42 U.S.C. § 3617.  To make a prima facie showing of retaliation under the FHA, "a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker*, 272 F.3d at 1128.  Avalon alleges that the City is enforcing the ordinance against it in retaliation for Avalon's suit against the City in 1999.  The City maintains that Avalon has not pleaded a plausible retaliation claim because it has failed to allege facts that show how the City's recent threat to enforce the zoning ordinance is causally linked to the prior lawsuit.  The City does not dispute that Avalon engaged in a protected activity or that it is subject to an adverse action.

In the context of the *McDonnell Douglas* burden-shifting framework, the City essentially argues that Avalon has not adequately alleged the causation prong of the prima facie case.  "The prima facie case under *McDonnell Douglas*, however, is an evidentiary

---

[15]In fact, the City recognizes that the burden-shifting used for Title VII disparate impact claims also applies to claims of unlawful retaliation. Although the City only cites to a Title VII retaliation case for this proposition, it argues as if the framework applies to Avalon's FHA retaliation claim.

standard, not a pleading requirement," and therefore "should not be transposed into a rigid pleading standard." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 512 (2002).[16]  Under *Swierkiewicz* the pleading of a prima facie case is sufficient, but not necessary, to survive a motion to dismiss.  *Id.* at 511; *see also Reyes v. Fairfield Props.*, 661 F.Supp.2d 249, 266 (E.D.N.Y. 2009) ("[P]laintiffs do not need to allege specific evidence that satisfies the elements of a *prima facie* case of retaliation at [the motion to dismiss] stage of the proceedings." (addressing FHA retaliation claim under 42 U.S.C. § 3617)).  Therefore, to satisfy Rule 8, Avalon's complaint need only contain a short and plain statement showing that Avalon is entitled to relief and giving the City fair notice of what its claim is and the grounds on which it rests.  *See Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (addressing claims under Title VII and the Texas Labor Code and citing *Swierkiewicz*).  Avalon alleges that the City is enforcing the zoning ordinance against it instead of against lower quality group homes in retaliation for Avalon's prior lawsuit against the City.  This satisfies the requirements of Rule 8(a) by giving the City fair notice of the claim and the grounds on which it rests.  *See Swierkiewicz*, 534 U.S. at 514.

But assuming *arguendo* that Avalon must plead a prima facie case of retaliation, "[i]t is relatively easy . . . for a plaintiff to establish a *prima facie* case." *Arbor Bend Villas*

---

[16]The Supreme Court has continued to cite and follow *Swierkiewicz* after its later decisions in *Twombly* and *Iqbal*.  *See Skinner v. Switzer*, ___ U.S. ___, 131 S.Ct. 1289, 1296 (2011).

*Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, 2005 WL 548104, at *7 (N.D. Tex. Mar. 9, 2005) (Means, J.) (quoting *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir. 1992)); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden in retaliation case as "minimal").   The City contends that Avalon is relying only on the temporal proximity between the first lawsuit and the recent enforcement action to create an inference of retaliation.   The court disagrees.   Avalon also alleges facts that, taken as true, are sufficient to show a minimal causal link between Avalon's earlier lawsuit and the City's more recent threat to enforce the zoning ordinance.   Subsequent to Avalon's original lawsuit against the City, Avalon opened other group homes located within the city of Dallas for people with Alzheimer's disease.   Other entities have established similar residences for people with Alzheimer's disease, but, according to Avalon, the City has noted that some of these residences are of poor quality.   Avalon avers that, when recently enforcing the ordinance, Dallas has targeted Avalon's group homes rather than facilities of lesser quality.   Avalon's allegations are sufficient to make a plausible, minimal showing of a causal link between Avalon's earlier lawsuit and the City's recent enforcement activities.   Accordingly, even if the court assumes that Avalon is obligated to plead a plausible prima facie case, it has done so.   The court therefore denies the City's motion to dismiss Avalon's FHA-based retaliation claim.

VIII

The City moves to dismiss Avalon's ADA claim under Rule 12(b)(6) for failure to state a claim on which relief can be granted. In response, Avalon seeks to voluntarily dismiss its ADA claim. The court grants the motion and dismisses the ADA claim.

\*      \*      \*

Accordingly, for the reasons explained, the City's July 15, 2011 motion to dismiss is granted in part and denied in part. The court concludes that Avalon has standing to assert its FHA claims, that Seib lacks standing, and that Avalon's reasonable accommodation claim is ripe. The court denies the City's motion to dismiss under Rule 12(b)(6) for all claims that plaintiffs have not voluntarily dismissed. The court grants Seib leave to replead to establish her standing, and it grants both plaintiffs leave to amend their FHA discrimination claim. The amended complaint must be filed within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

September 19, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 21 -